**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATE OF AMERICA** | : | |
| Plaintiff, | : | Case No: |
| vs. | : | JUDGE |
| **ADAM L. STEINBERGER** | : | INDICTMENT |
| Defendant. | : | 18 U.S.C. § 371 |
| | | **FORFEITURE ALLEGATION** |

**THE GRAND JURY CHARGES:**

<u>**GENERAL ALLEGATIONS**</u>

At all times relevant to this Indictment:

<u>A. GI Bill-33</u>

1.  The Post-9/11 GI Bill, Chapter 33 (GI Bill-33), was a United States Department of Veterans Affairs (VA) educational assistance program for qualifying military veterans who were pursuing a post-secondary education. GI Bill-33 offered monetary benefits for school tuition and fees, a monthly housing allowance, and a books-and-supplies stipend, among other benefits, with the amount of all monetary benefits dependent on the veteran's military service time and school type.

2.  Veterans qualified for benefits under GI Bill-33 if they served at least ninety (90) days of aggregate active duty on or after September 11, 2001, with an honorable discharge; if they received a Purple Heart on or after September 11, 2001, and were honorably discharged after any amount of service; or if they served for at least thirty (30) continuous days on or after September 11, 2001, and were honorably discharged with a service-connected disability.

1

3. GI Bill-33 benefits were awarded to veterans as a percentage tier of their educational expenses (up to 100%) depending on the veteran's total active-duty service time. To qualify, veterans were required to register for classes, and the relevant educational institutions were required to certify the veterans' enrollment to the VA. The duration of the benefits typically lasted up to a maximum of thirty-six (36) months but could be extended to forty-eight (48) months with multiple qualifying active-duty periods of service.

4. GI Bill-33 and accompanying regulations defined "educational assistance" as "all monetary benefits (including but not limited to tuition, fees, and monthly housing allowances) payable under 38 U.S.C. chapter 33 to, or on behalf of, individuals who meet the eligibility requirements for **pursuit** of an approved program of education under 38 U.S.C. chapter 33."

5. Under GI Bill-33 and accompanying regulations, the term "pursuit" meant "to work, during a certified enrollment period, towards the objective of a program of education. This work must be in accordance with approved institutional policy and applicable criteria of title 38 of the U.S. Code, and must be necessary to reach the program's objective."

6. Tuition and fees under GI Bill-33 were paid directly to the educational institution in which the veteran was enrolled. Monthly housing allowances were generally paid directly to the veteran. Veterans typically received a lump-sum stipend of up to a $1,000 per academic year for books and supplies. This stipend was also generally paid directly to the veteran.

B. Federal Student Aid

7. Through "Federal Student Aid," the United States Department of Education (DOE) awards billions of dollars each year in grants, work-study funds, and direct low-interest loans to millions of students pursuing post-secondary education.

8. Federal Student Aid was separate from and in addition to VA educational benefits (like GI Bill-33). VA benefits typically covered percentage-based tuition and fees, monthly housing allowances, and books-and-supplies stipends, while Federal Student Aid, including grants, work-study funds, and student loans could be used to cover remaining educational costs or to cover day-to-day expenses if the student's total educational assistance benefits exceeded their total costs.

9. Federal Student Aid for military veterans and active-duty service members was designed to work in conjunction with VA educational benefits like GI Bill-33, often providing lower interest rates on student loans, specialized repayment options, and loan forgiveness programs.

10. A Free Application for Federal Student Aid (FAFSA) was the essential, free form that students completed to apply for federal, state, and institutional financial aid, including grants, work-study funds, and loans. When completing the FAFSA, students provided financial information regarding their assets, income, and other matters to determine their eligibility for need-based assistance for higher education. A FAFSA was due annually, and it unlocked access to the largest source of student aid, with schools and states also using the data for their own aid packages. Veterans were typically classified as independent students for FAFSA purposes, meaning they did not need to report financial data from their parents.

### C. Total and Permanent Disability Discharge Loan Forgiveness

11. Veterans determined by the VA to be totally and permanently disabled due to a service-connected disability, or who were deemed unable to maintain substantially gainful employment due to a service-connected disability, may have qualified for a discharge of their federal student loans.

### D. Institutional Policies on Academic Integrity

12. The relevant academic institutions had strict policies against academic dishonesty, which included prohibiting students from submitting work that was not their own. Submitting someone else's work, often referred to as "contract cheating" or "ghostwriting," was a serious violation of academic integrity polices.

13. Academic honesty was a fundamental requirement for qualifying and maintaining GI Bill-33 benefits and Federal Student Aid. GI Bill-33 and Federal Student Aid policies required the student to personally complete their own course assignments, as the government benefits were for the "pursuit" of the veteran's education and training, not for paying someone else to do the course work. GI Bill-33 and Federal Student Aid were paid only for the student to learn and earn their degree or certification.

### COUNT 1
### Conspiracy to Defraud the United States
### [18 U.S.C. § 371]

14. From on or about January 8, 2018, and continuing thereafter until on or about February 1, 2024, in the Southern District of Ohio and elsewhere, DEFENDANT ADAM L. STEINBERGER (DEFENDANT STEINBERGER), and other individuals, both known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate, and agree with each other to defraud the United States, that is the United States Department of Veterans Affairs (VA) and the United States Department of Education (DOE), by causing the VA and the DOE to pay for educational assistance, including tuition and fees, monthly housing allowances, books-and-supplies stipends, and Federal Student Aid, including federal loan forgiveness, for college coursework that DEFENDANT STEINBERGER and student co-conspirators knowingly and deceitfully paid a third party co-conspirator to "ghostwrite" and complete as if it were the work of DEFENDANT STEINBERGER and other co-conspirators.

4

## Object of the Conspiracy

15. The principal purpose and object of the conspiracy was for DEFENDANT STEINBERGER and other co-conspirators to enrich themselves by deceiving the various Departments of the United States and educational institutions to obtain GI Bill-33 educational assistance, Federal Student Aid, and college degrees.

## Manner and Means

16. It was part of the conspiracy that DEFENDANT STEINBERGER devised and executed a scheme to defraud the United States in which he recruited several co-conspirators, including a family member and friends who served in the military, to enroll in college courses to fraudulently obtain educational assistance under GI Bill-33 and Federal Student Aid.

17. It was further part of the conspiracy that DEFENDANT STEINBERGER and other co-conspirators enrolled in college courses and applied for and received GI Bill-33 educational assistance for tuition and fees, monthly housing allowances, and books-and-supplies stipends.

18. It was further part of the conspiracy that, in addition to the educational assistance obtained through GI Bill-33, DEFENDANT STEINBERGER and other co-conspirators obtained Federal Student Aid while enrolled in college courses.

19. It was further part of the conspiracy that DEFENDANT STEINBERGER and other student co-conspirators certified that they would follow the academic policies of the relevant educational institutions in which they enrolled, including academic integrity polices that prohibited DEFENDANT STEINBERGER and other student co-conspirators from submitting course assignments that were plagiarized or the result of someone else's work.

20. It was further part of the conspiracy that DEFENDANT STEINBERGER found and hired a co-conspirator, P.K., residing in Africa to complete course assignments for himself and other student co-conspirators who were enrolled in American educational institutions.


21. It was further part of the conspiracy that DEFENDANT STEINBERGER and co-conspirators deceitfully submitted those course assignments as if they had been completed by DEFENDANT STEINBERGER and student co-conspirators.

22. It was further part of the conspiracy that, by fraudulently submitting course assignments completed by someone other than themselves, DEFENDANT STEINBERGER and other co-conspirators defrauded the United States and caused the government to pay monetary benefits on their behalf, including GI Bill-33 educational assistance, such as tuition and fees, monthly housing allowances, and books-and-supplies stipends, as well as Federal Student Aid, such as direct federal student loans and loan forgiveness from the DOE. A significant portion of those monetary benefits was paid directly to DEFENDANT STEINBERGER and other student co-conspirators or remitted to them after flowing first to the relevant educational institutions.

23. It was further part of the conspiracy that DEFENDANT STEINBERGER and other student co-conspirators submitted federal student loan discharge applications and caused federal student loan discharge applications to be automatically submitted on their behalf to have their federal student loans completely discharged based on their alleged Total and Permanent Disability (TPD).

24. It was further part of the conspiracy that student co-conspirators would transfer a portion of the fraudulently obtained government benefits and student loan discharge proceeds to DEFENDANT STEINBERGER through PayPal, Venmo, Zelle, and other money transfer applications for his role in devising and executing the scheme to defraud the United States.

## Overt Acts

25. In furtherance of the conspiracy to defraud the United States, and in order to effect the objects of the conspiracy, the following overt acts, among others, were committed in the

Southern District of Ohio and elsewhere by DEFENDANT STEINBERGER or one or more of the other co-conspirators:

26. DEFENDANT STEINBERGER submitted and caused the submission of GI Bill-33 applications for himself and other co-conspirators for the purpose of receiving educational assistance payments.

27. DEFENDANT STEINBERGER submitted and caused to be submitted Free Applications for Federal Student Aid for himself and other co-conspirators for the purpose of receiving Federal Student Aid.

28. DEFENDANT STEINBERGER submitted and caused the submission of applications for TPD discharge of federal student loans for himself and other co-conspirators.

29. Co-conspirator P.K. completed course assignments that P.K. either emailed to DEFENDANT STEINBERGER and other student co-conspirators or filed directly with the relevant educational institutions on behalf of student co-conspirators.

30. On or about the following dates, student co-conspirators, and financial accounts registered to student co-conspirators, transferred part of the fraudulently obtained GI Bill-33 educational assistance or Federal Student Aid as payment to DEFENDANT STEINBERGER:

| Date | Amount | Digital Payment Platform | Co-Conspirator |
|---|---|---|---|
| June 29, 2018 | $1053.50 | Venmo | K.G. |
| April 17, 2019 | $2,999.99 | Venmo | K.G. |
| May 31, 2019 | $2,573.38 | PayPal | B.L. |
| July 1, 2019 | $1,372.80 | Zelle | B.L. |
| September 30, 2019 | $637.95 | Zelle | M.J. |
| January 25, 2021 | $1,200.00 | Venmo | K.G. |

| February 28, 2022 | $2,533.00 | PayPal | S.S. |
| October 31, 2022 | $2,533.00 | Venmo | S.S. |

31. On or about the following dates, DEFENDANT STEINBERGER electronically transferred funds to co-conspirator P.K. as payment for completing course assignments for himself and other student co-conspirators:

| Date | Amount | Digital Payment Platform |
| --- | --- | --- |
| October 3, 2018 | $220.00 | PayPal |
| February 10, 2019 | $1,700.00 | PayPal |
| April 2, 2019 | 2,000.00 | PayPal |
| July 1, 2020 | $600.00 | PayPal |
| August 2, 2021 | $300.00 | PayPal |
| November 1, 2022 | $300.00 | PayPal |
| June 1, 2023 | $300.00 | PayPal |
| January 2, 2024 | $225.00 | PayPal |

**All in violation of 18 U.S.C. § 371.**

## FORFEITURE ALLEGATION

1. The allegations contained in Count 1 of this Indictment are incorporated here for the purpose of alleging forfeitures to the United States pursuant to 28 U.S.C. § 2461(c) and 18 U.S.C. §981(a)(l)(C).

2. Upon conviction of Count 1, the defendant, **ADAM L. STEINBERGER,** shall forfeit to the United States, pursuant to 28 U.S.C. § 2461(c) and 18 U.S.C. § 981(a)(l)(C), any

property, real or personal, constituting, or derived from, proceeds traceable to that offense.

3. If any of the property described above, as a result of any act or omission of the defendant, **ADAM L. STEINBERGER:**

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States to seek forfeiture of substitute property of the defendant, **ADAM L. STEINBERGER,** up to the value of the forfeitable property, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

**Forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and Rule 32.2 of the Federal Rules of Criminal Procedure.**

A TRUE BILL.

_s/Foreperson_
FOREPERSON

DOMINICK S. GERACE II
UNITED STATES ATTORNEY

KENNETH F. AFFELDT (0052128)
NOAH R. LITTON (0090479)
Assistant United States Attorneys